UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| MOHAMMED S. MAKDA, derivatively on behalf of nominal defendant Motricity, Inc., | Case No. |
| Plaintiff, | |
| v. | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| RYAN K. WUERCH, HUNTER C. GARY, BRETT ICAHN, LADY BARBARA JUDGE, JEFFREY A. BOWDEN, SUZANNE H. KING, and BRIAN TURNER, | |
| Defendants, | JURY TRIAL DEMANDED |
| —and— | |
| MOTRICITY, INC., | |
| Nominal Defendant. | |

Plaintiff Mohammed S. Makda, by and through his undersigned attorneys, brings this action derivatively on behalf of Nominal Defendant Motricity, Inc. ("Motricity" or the "Company") and hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") against certain current and/or former members of Motricity's Board of Directors (the "Board", or the "Individual Defendants", and together with Motricity, the "Defendants") seeking to remedy Defendants' breaches of fiduciary duties from January 22, 2010 to the present (the "Relevant Period"). Plaintiff alleges, upon personal knowledge as to himself and his own

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

acts, and, as to all other matters upon information and belief, based upon his attorneys' investigation, which included, but was not limited to a review of United States Securities and Exchange Commission ("SEC") filings, news reports, press releases, and other publicly available information regarding the Company, as follows:

## NATURE OF THE ACTION

1.      This is a derivative action brought on behalf of Motricity and seeking relief on behalf of Motricity against certain current and former members of Motricity's Board of Directors for their breaches of fiduciary duty and other misconduct during the Relevant Period that have caused and will continue to cause substantial harm to the Company.

2.      The Individual Defendants breached the fiduciary duties they owed and owe to Motricity by failing to establish and maintain internal controls which would have prevented the Company from disseminating materially false and misleading and inaccurate statements and other information to shareholders, and by failing to properly manage and oversee the Company. The Individual Defendants' breaches of their fiduciary duties relate to Motricity's failure to disclose known, negative developments and trends in Motricity's business.   Consequently, Motricity has been injured and continues to be injured, for which this suit seeks to recover damages and/or restitution and other relief on behalf of the Company.  Injury to the Company include investigatory costs, litigation costs, and liability it has an will incur for violations of securities laws, including costs for defending and liability which may result from the securities class action lawsuit filed against Motricity, *Callan v. Motricity, Inc., et al.*, No. C11-1340 TSZ in the United States District Court for the Western District of Washington on August 11, 2011

3.      Motricity provides mobile data solutions which enable wireless carriers to deliver mobile data services to subscribers in the United States, Europe and Asia.  During the Relevant Period, Defendants allowed the Company to make materially false and misleading statements concerning Motricity's present and future business prospects.  For instance, Motricity touted on-track international deployments, "encouraging usage metrics," "strong leading indicators of substantial international growth," and forecasted "double-digit increase in North American

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

revenue over 2010 levels." However, the Company was already experiencing negative trends in Motricity's business, particularly with regard to the Company's most important customers, which Motricity failed to disclose. This was due to the fact that a fast-growing percentage of mobile telephone users was moving toward the adoption of smartphones, while Motricity's business model caters to the fading category of "feature phones" or non-smartphones which can be provided with internet capabilities through services such as those offered by Motricity. The rapid adoption of smartphones by mobile telephone users, and in particular with subscribers of two of Motricity's largest North American customers, Verizon and AT&T, was creating current and future impediments to Motricity's positive financial outlook in the near and long term forecast. Despite these facts, however, the Company continued to tout its potential and expectations of commercial and financial growth.

4.      As a result of the Company's materially misleading statements made throughout the first half of 2010 in press releases and other SEC filings related to Motricity's initial public offering ("IPO") of June 18, 2010, as well as its failures to disclose material facts regarding the Company's current and projected business outlook, Motricity's common stock was caused to trade at artificially inflated prices during the Relevant Period, with its share price peaking at $30.74 on November 9, 2010.

5.      On June 17, 2010, the Company announced that its IPO of six million shares would be priced at $10 per share, and that one or more entities affiliated with Carl Icahn would purchase one million of the offered shares at the IPO price of $10 per share, less the underwriting discount. Carl Icahn had an existing 18.5% beneficial ownership interest in Motricity prior to this IPO purchase. An overallotment option was granted to the underwriters to purchase up to an additional 750,000 shares, for net proceeds of $51.4 million.

6.      Following the IPO, and throughout the Relevant Period, the Company represented to the public that it would continue with its positive financial performance well into the future, despite the fact that it was competing against increasingly popular smartphones with internet accessing capabilities that obviated the need for its services. In an effort to capitalize on the

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

1  strong growth of both smartphone and mobile advertising markets, in April of 2011 the

2  Company acquired Adenyo, Inc. ("Adenyo"), a mobile marketing, advertising, and analytics

3  solutions provider with operations in the United States, Canada, and France.

4      7.      On May 3, 2011, on the heels of the Adenyo acquisition, the Company, under the

5  Individual Defendants' watch, issued a press release announcing its financial results for the first

6  quarter of 2011.  Motricity reported a net loss of $6.1 million (a loss of $0.15 diluted earnings

7  per share), on revenue of $32.2 million, and estimated second quarter revenue "to be in the range

8  of $36 million to $38 million."  Despite Motricity's reported 37% negative return year-to-date,

9  the Company announced in its press release an optimistic forecast for the coming year in both

10 market demand and for the Company's domestic and international growth, with Defendant

11 Wuerch stating that "[w]ith the increase in mobile data usage and adoption of smartphone

12 devices that we're currently seeing, plus increased visibility since our last earnings call, we

13 believe that in addition to strong international growth in 2011, Motricity will also post a double-

14 digit increase in North American revenue over 2010 levels."  In reaction to this news, the

15 Company's stock dropped $1.82 per share, to close at $10.99 per share on May 4, 2011.

16     8.      On August 9, 2011, Motricity issued a press release announcing its financial

17 results for the second quarter of 2011.  For the second quarter in a row, the Company reported a

18 net loss, this time of $4.3 million (a loss of $0.09 diluted earnings per share), together with

19 revenue of $34.6 million.  Revenue for the quarter fell below both the Company's own publicly

20 stated expectations, as well as Wall Street's expectations, with analysts polled by Thomson

21 Reuters estimating Motricity's second quarter revenue to be $37.1 million.  The Company's

22 former Chief Executive Officer ("CEO"), Defendant Ryan Wuerch, claimed that the results were

23 below expectations, and revealed the gravity of the Company's situation, namely the fact that

24 while struggling to grow, it was being hampered by its "inability to close new deals."  In reaction

25 to this news, on August 10, 2011, Motricity's stock price suffered a significant drop, opening at

26 $2.26 per share – a decline of 50% – on heavy trading volume.

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel:  (425) 868-7813 ● Fax:  (425) 868-7870

9.    The Individual Defendants, due to their positions as directors of the Company, had access to non-public material information regarding the Company's sales projections, customer demand, and market conditions.  However, the Individual Defendants, by their failure to maintain internal controls and their failure to oversee and properly manage the Company, allowed Motricity to conceal harsh truths from the investing public during the Relevant Period, and allowed the Company to issue materially false and misleading statements regarding the Company's business practices and financial condition.  The Company lacked a sufficient basis for the positive statements and optimistic outlooks it disseminated to shareholders and the investing public at large.  The undisclosed information included the following:

(a)    Demand for Motricity's products and services were being adversely affected by consumers' faster-than-expected adoption of smartphones.  An increasingly smaller portion of the market identified a need for Motricity's products and services;

(b)    Demand for Motricity's products and services by the Company's largest customers was not increasing to the extent represented; and

(c)    As a result, Motricity's overall business was not growing as quickly as represented, particularly in the United States.

10.    Because of their failure to maintain internal controls and their failure to oversee and properly manage the Company, the Individual Defendants harmed the Company by allowing it and failing to prevent it from issuing materially false and misleading statements, including those within the Company's final prospectus (the "Prospectus") dated June 17, 2010 and registration statement on Form S-1 filed with the SEC on January 22, 2010 and its accompanying amendments (together, the "Registration Statement"), resulting in exposure to federal securities law violations and other potential liability and costs.  Due to the Individual Defendants' wrongful acts and omissions, the Company is now exposed to millions of dollars in defense costs and potential liability as a result of securities class action litigation filed against Motricity.  As a result, Plaintiff seeks, among other things, to recover damages and/or restitution and other relief

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

1  for injuries suffered, and to be suffered, by the Company as a result of the wrongful acts of the

2  Individual Defendants as described herein.

3                                          **JURISDICTION AND VENUE**

4       11.    This Court has jurisdiction over the subject matter of this action pursuant to 28

5  U.S.C. § 1332 in that Plaintiff and Defendants are citizens of different states and the amount in

6  controversy exceeds $75,000 exclusive of interest and costs.  Plaintiff is a citizen of Texas, and

7  no Defendants is a citizen of that state.

8       12.    This action is not a collusive one to confer jurisdiction on a court of the United

9  States which it would otherwise not have.

10      13.    Venue is proper in this district because nominal defendant Motricity maintains its

11  principal executive offices in the District, and Defendants have conducted business and engaged

12  in numerous activities which have had an effect on this District.

13      14.    Venue is proper in this district because a substantial portion of the transactions

14  and wrongs alleged herein occurred in this district.

15                                               **PARTIES**

16      15.    Plaintiff Mohammed S. Makda is a current shareholder of Motricity and has held

17  Motricity stock during the Relevant Period.  Plaintiff is a resident and citizen of the state of

18  Texas.

19      16.    Nominal defendant Motricity is a corporation organized and existing under the

20  laws of Delaware.  Motricity has its principle executive offices located at 601 108th Avenue

21  Northeast, Suite 800, Bellevue, Washington 98004.  Motricity provides mobile data service

22  solutions to mobile operators, brands, and advertising agencies.  The Company provides

23  predictive analytics capabilities and relevance-driven merchandising, marketing, and advertising

24  solutions to customers in the United States, the United Kingdom, the Netherlands, and

25  Singapore.  The Company was formed in 2001 and was originally known as PowerByHand.  The

26  Company's name was changed to Motricity in October 2004 after the Company's merger with

27  Pinpoint Networks.

VERIFIED SH'HOLDER DERIV. COMPLAINT        - 6 -

17.     Defendant Ryan K. Wuerch ("Wuerch") is the Founder of Motricity and was the CEO and a director of Motricity since the Company's founding in 2001 until his termination on August 20, 2011.  Prior to the closing of the Company's IPO in June 2010, Wuerch also served as Chairman as Motricity's Board of Directors.   During the Relevant Period, Wuerch sold 294,800 shares of his Motricity stock for proceeds of over $5.6 million.  Defendant Wuerch also signed the Company's false and misleading Registration Statement filed with the SEC in connection with the Company's June 17, 2010 IPO.  Wuerch is a resident of Washington.

18.     Defendant Hunter C. Gary ("Gary") is, and has been a director of Motricity since 2007.  He also serves as Chairman of the Board's Audit Committee.  Defendant Gary signed or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC in connection with the Company's June 17, 2010 IPO.  Gary is married to Shana Golden Gary.  Ms. Gary is Carl Ichan's stepdaughter.  Gary is a resident of New York.

19.     Defendant Brett Icahn ("Icahn") is, and has been a director of Motricity since January 2010, and he is also a member of the Board's Audit Committee.  Defendant Icahn signed or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC in connection with the Company's June 17, 2010 IPO.  Defendant Brett Icahn is Carl Icahn's son.  Defendant Icahn is a resident of New York.

20.     Defendant Lady Barbara Judge ("Judge") is, and has been a director of Motricity since January 2010.  She has been Chairperson of the Board since June 2010.  Defendant Judge signed or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC in connection with the Company's June 17, 2010 IPO.  Judge is a resident of England.

21.     Defendant Jeffrey A. Bowden ("Bowden") was a director of Motricity from April 2010 until his resignation on February 16, 2011.  Defendant Bowden signed or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC in connection with the Company's June 17, 2010 IPO.  Bowden is a resident of Indonesia.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

22.     Defendant Suzanne H. King ("King") was a director of Motricity from 2004 to June 30, 2011, and served as a member of the Board's Audit Committee.  Defendant King signed or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC in connection with the Company's June 17, 2010 IPO.  King is a resident of Virginia.

23.     Defendant Brian Turner ("Turner") was a director of Motricity from December 2009 to July 11, 2011, and served as Chairman of the Board's Audit Committee.  Defendant Turner signed or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC in connection with the Company's June 17, 2010 IPO.  Turner is a resident of Washington.

24.     The Defendants identified in paragraphs 17-23 are the Individual Defendants. The Individual Defendants and Motricity are collectively referred to herein as the "Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

25.     As directors of Motricity, the Individual Defendants, Wuerch, Gary, Icahn, Judge, Bowden, King, and Turner, owed and/or owe to Motricity specific fiduciary obligations.  These fiduciary duties include the duty to act loyally, to act in good faith, and to speak with candor in responsibly overseeing the Company.  Their roles as directors of Motricity require them to install effective internal controls, make reasonable inquiry and to maintain oversight and supervision of the Company.

26.     At all times during the Relevant Period, the Individual Defendants had access to non-public information regarding Motricity's financial condition, business practices, and present and future business prospects, including sales projections and projections regarding customer demand and market conditions.  The Individual Defendants were privy to this information by nature of their role within the Company as members of the Board, and acquired such non-public information through internal corporate documents, conversations among the directors themselves and with corporate officers and employees, attendance at management meetings and meetings of the Board, and through reports and other information provided to them in connection with their

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

role as directors of Motricity.  Throughout the Relevant Period, Motricity made materially false and misleading statements concerning Motricity's financial condition, business practices, and present and future business prospects, and the Individual Defendants permitted such conduct to take place within the Company.  For instance, the Company touted on-track international deployments, "encouraging usage metrics," "strong leading indicators of substantial international growth," and projections of "strong international growth in 2011" characterized by Motricity's forecasted "double-digit increase in North American revenue over 2010 levels."  However, Motricity was already experiencing negative trends in Motricity's business, particularly with regard to the Company's most important customers, facts which Defendants failed to disclose.

27.    The negative trends affecting the Company's business arose from the fact that a fast-growing percentage of mobile telephone users was moving toward the adoption of smartphones, while Motricity's business model caters to the fading category of "feature phones" or non-smartphones which can be provided with internet capabilities through services such as those offered by Motricity.  The rapid adoption of smartphones by mobile telephone users, and in particular with subscribers of two of Motricity's largest North American customers, Verizon and AT&T, was creating current and future impediments to Motricity's positive financial outlook in the near and long term forecast.  Despite these facts, however, the Company continued to tout its potential and expectations of commercial and financial growth.

28.    Despite their possession of non-public materially adverse information relating to the Company, the Individual Defendants disregarded the fact that adverse material facts were not disclosed to, and were being concealed from, the investing public.  The Individual Defendants breached their fiduciary duties by their failure to prevent the Company from violating the law, by their failure to install internal controls designed to prevent such subterfuge, and by their failure to maintain oversight and manage the Company.

29.    As a result of the Individual Defendants' aforementioned breaches of their fiduciary duties, the Company is now the subject of class action litigation alleging violation of the federal securities laws, which necessitates the Company incurring wasteful costs and risks.

VERIFIED SH'HOLDER DERIV. COMPLAINT        - 9 -

Specifically, a case titled *Callan v. Motricity, Inc. et al.* was filed in the United States District Court for the Western District of Washington on or about August 12, 2011.  That securities-fraud litigation arose from the Individual Defendants' wrongful course of conduct.

**Materially False and Misleading Statements Issued During the Relevant Period**

30.    On January 22, 2010, Defendants allowed the Company to issue and file its Registration Statement with the SEC on Form S-1 in connection with its IPO.  As with all future iterations of this filing, the initial form of the Registration Statement emphasized the growth potential of Motricity's U.S. and international market, with forecasts through 2012 showing significant upward growth:

> The Yankee Group estimates that the mobile data services market in the U.S. will grow from $35 billion in 2008 to $47 billion in 2012, and worldwide will grow from $174 billion in 2008 to $244 billion in 2012.  The mobile data services market predominantly includes data access, content and applications, commerce and messaging services.

In addition, and as detailed more fully below with relation to Motricity's Prospectus filed with the SEC on June 17, 2010, the Company's initial Registration Statement of January 22, 2010 emphasized the growth potential of Motricity itself, the demand for content delivery platforms, and the uniquely advantageous position of the Company as compared with wireless carriers acting alone in this context, stating that:

> Given the complexity of the mobile data ecosystem, with evolving technologies and a proliferation of mobile devices and operating systems, the current landscape in the mobile data services market has become increasingly challenging for wireless carriers to manage effectively on their own.  We believe that, by partnering with a content platform provider, wireless carriers are able to more effectively leverage their brands to provide an enhanced subscriber experience with mobile data services, enabling them to attract and retain subscribers and increase mobile data ARPU [average revenue per user].  In addition, wireless carriers are seeking to utilize subscriber usage data to provide a more relevant, timely and personalized user experience that is secure, private, and customized for targeted offerings.  By partnering with a content delivery platform provider, wireless carriers are able to optimize their mobile data services strategy, and to focus on their core competencies.

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813 ● Fax:  (425) 868-7870

31.    On June 17, 2010, Motricity filed with the SEC a Form S-1/A Registration Statement, Amendment No. 11 to the Company's Form S-1 of January 22, 2010, to facilitate its offering of six million shares of Motricity common stock to the public.  On that same day, the Registration Statement was declared effective by the SEC.

32.    On June 18, 2010, Motricity announced the pricing of its IPO in a press release, stating in part:

> Motricity, a leading provider of mobile data solutions, announced that it has priced its initial public offering of 6,000,000 shares of common stock at a price of $10 per share. This includes 1,000,000 shares that are being purchased at the initial public offering price, less the underwriting discount by one of more entities affiliated with Carl C. Icahn. Mr. Icahn has an existing 18.5% beneficial ownership interest in the Company prior to this purchase.  Motricity's common stock will begin trading on the NASDAQ Global Market today under the symbol "MOTR."  The underwriters have a 30-day option to purchase up to an additional 750,000 shares of common stock from the Company at the initial public offering price.

> J.P. Morgan Securities Inc. and Goldman, Sachs & Co. are acting as joint book-running managers.  Deutsche Bank Securities Inc., RBC Capital Markets Corporation, Robert W. Baird & Co. Incorporated, Needham & Company, LLC and Pacific Crest Securities LLC are acting as co-managers.

33.    The Prospectus filed in connection with the IPO again emphasized the growth potential of Motricity's U.S. and international markets, with estimates detailing consistent growth potential through 2013:

> The Yankee Group estimates that the mobile data services market in the U.S. will grow from $40 billion in 2009 to $48 billion in 2013, and worldwide will grow from $195 billion in 2009 to $253 billion in 2013.  The mobile data services market predominantly includes data access, content and applications, commerce and messaging services.

34.    In addition, the Prospectus emphasized the growth potential of the Company itself within this market:

> We intend to expand our business in developed and emerging international markets, such as those in Southeast Asia, India, and Latin America.  We recently entered into an agreement with XL Axiata, a wireless carrier in Indonesia.  We intend to apply our

VERIFIED SH'HOLDER DERIV. COMPLAINT      - 11 -

expertise gained from the U.S. market and fully leverage the capabilities and scale of the mCore platform to enable the rapid deployment of advanced mobile data services in these new markets in a cost-effective and efficient manner.

*        *        *

We believe that we are a market leader in mobile data services and solutions in terms of technological capabilities, market share and range of service offerings, and we intend to expand on this position. . . .

*        *        *

We intend to leverage our core competencies, technologies, and existing market position to broaden our offerings and customer base and advance into new market segments. . . .

We intend to extend further our support for new versions of smartphones and extend our full support for data-rich applications which have higher rates of data consumption on these mobile devices.  In addition, we will continue to leverage our subscriber behavior insights and user interface expertise to offer more personalized and richer experiences to smartphones.  We expect to fully capitalize on the extensive capabilities of smartphones and their significant market adoption.

35.    The Prospectus supported Motricity's statements regarding the Company's growth potential by stressing the Company's purported competitive strengths and strong relationships with its large customers:

*Strong Relationships with Wireless Carriers.*  We have well-established relationships with the top wireless carriers in the U.S. market, including Verizon Wireless, AT&T, Sprint and T-Mobile USA and a new relationship with XL Axiata in Indonesia.  We believe that we have been an integral partner with our wireless carrier customers and have assisted them with all phases of their mobile data services strategies, including design, development, deployment, provisioning, management, billing and customer support.

*Deep Integration within the Mobile Data Ecosystem.*  Our mCore service delivery platform is deeply integrated into our wireless carrier customers' systems, with the result that we can more effectively deliver an enhanced mobile data experience to their subscribers.  We connect directly into our wireless carrier customers' wireless network infrastructure as well as their provisioning and billing systems and their customer care systems . . . .

VERIFIED SH'HOLDER DERIV. COMPLAINT    - 12 -

*Highly Scalable Platform.*  Our mCore service delivery platform has been built using a flexible modular architecture that enables wireless carriers to deliver a highly scalable and highly reliable, carrier-branded experience.

*Comprehensive Expertise in Managed Service Operations.*  . . . . We deliver these services to the world's leading carriers, application and content providers ranging in complexity from roll-out and testing of minor customizations to major new strategic initiatives involving numerous third parties and onboarding of content and roll-out of a continually expanding set of devices.  Our managed service environment consists of thousands of servers across multiple datacenters and is capable and contracted to deliver highly reliable service delivery reaching up to 99.999% availability.

36.    On August 3, 2010, the Company issued, and filed with the SEC, a press release announcing its financial results for the second quarter of 2010, for the period ending June 30, 2010.  Motricity reported a 5% increase in revenue up to $30.4 million.  The Company's then-CEO, Defendant Wuerch, commented on the results as follows:

Solid execution, accelerated revenue growth and significant margin expansion enabled Motricity to exceed expectations in revenues, Adjusted EBITDA and Adjusted Net Income . . . . ***Motricity's mCore platform is driving mobile data services and mobile internet growth for some of the largest carriers and enterprises in the world***.  Our ability to deliver 'Mobile as a Service' through a cloud computing environment is producing strong results that were evidenced in the second quarter.  ***Our domestic business is continuing to grow as AT&T has contracted to implement our next-generation storefront solution – Marketplace.  Moreover, we signed a multi-year extension to our longstanding relationship with Verizon Wireless, which includes enabling the mobile internet across Verizon's newest smartphones such as the HTC Incredible and Droid X***.  We are capitalizing on the massive global opportunity for mobile internet users by adding XL Axiata in Indonesia, one of the largest and fastest growing carriers in Southeast Asia, as the first customer in our Asia Pacific region growth strategy.  We believe that this new relationship is ***a powerful leading indicator that carriers are turning to Motricity as their mobile data services partner of choice on a worldwide basis***. [emphasis added]

37.    On November 2, 2010, the Company issued a press release announcing its financial results for the third quarter of 2010, for the period ending September 30, 2010.

VERIFIED SH'HOLDER DERIV. COMPLAINT        - 13 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

Motricity reported that revenue for the quarter increased 35% year-over-year to $37.9 million. Defendant Wuerch commented on the results as follows:

> Motricity has an exceptional, global opportunity, and we have made substantial progress during the third quarter.   As a mobile Internet pure-play, ***we believe we are well-positioned to drive strong growth year-over-year through the fourth quarter and beyond*** . . . . In North America, we successfully launched AT&T's AppCenter, powered by mCore Marketplace, providing AT&T's subscribers a broad range of content including applications, music, videos and games with highly-personalized merchandizing and a new, simplified express purchase process.   We also rolled out MobileCast a compelling new content management service giving carriers an intelligent architecture to drive mobile data services revenues through delivery of relevant media, applications and digital goods directly to subscribers' smartphones.
>
> We continue to capitalize on the unparalleled opportunities available in the emerging international markets and strengthened this position by launching XL Axiata's XLGo! in Indonesia, and by becoming the mobile data services provider for one of India's largest operators, Reliance Communications, with over 105 million subscribers.   We experienced additional gains in Adjusted EBITDA and Adjusted Net Income, driving margin and shareholder value by leveraging our 'Mobile as a Service' cloud computing model . . . ." [emphasis added]

Following this earnings announcement and the subsequent conference call, shares of Motricity's stock rose $6.49 per share over the next four trading days, peaking with a closing price of $30.74 per share on November 9, 2010, the highest price per share achieved during the Relevant Period.

38.     On February 8, 2011, the Company issued, and filed with the SEC, a press release announcing its financial results for the fourth quarter of fiscal year 2010.   Motricity reported net income of $2.9 million ($0.06 diluted earnings per share), and revenue of $36 million for the fourth quarter.   The press release included the following statements from then-CEO Wuerch:

> 2010 was a breakout year for Motricity.   During our first six months as a publicly-traded company we posted strong revenue, margin and profit growth.   ***Since our IPO last June, Motricity has strengthened its leadership position within the industry.   We have continued to deliver market leading solutions for AT&T, Verizon and Sprint while aggressively expanding our international footprint – signing six new international operators throughout SE Asia and India – more than doubling our global addressable market opportunity.***   Moreover, in the fourth quarter we developed and launched a new

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

solution in partnership with Sprint and HSN highlighting how Motricity's mCore platform delivers smartphone solutions that enhance the mobile experience on behalf of our enterprise customers.

Our proposed acquisition of Adenyo, a global leader in mobile advertising, marketing, and analytics, further expands our immediate market opportunity into the rapidly growing mobile advertising and marketing space which ABI Research estimates will reach $29.9 billion in 2014 globally.  Motricity has the opportunity to further monetize its access to over 350 million subscribers by integrating Adenyo's technology and deep enterprise and agency relationships into our mCore platform.  Motricity's long-term objective is to participate in the direct and indirect monetization of over a billion users coming through our cloud-based, mCore platform.  Motricity's ability to deliver highly personalized, relevant content and value-added services to mobile users globally through our 'mobile as a service' offering provides us with the most comprehensive mobile data services platform in the market today.  [emphasis added]

39.    On April 14, 2011, the Company issued a press release announcing its acquisition of Adenyo Inc., a mobile marketing, advertising, and analytics solutions provider with operations in the United States, Canada, and France.  The press release stated, in part:

With the acquisition of Adenyo and integration of their platform into mCore, we are changing the landscape of the mobile data services industry.  Innovative operators, brands and agencies can now leverage Motricity's software as a service platform to provide highly targeted mobile advertising, marketing and analytics solutions.  Our expertise will help them expand their market reach and provide their customers with relevant content and services.  Motricity is creating new revenue opportunities by expanding its customer base to include global brands and ad agencies.  Our focus in the coming years is to have one billion mobile customers worldwide accessing these offerings and services through Motricity's mCore platform.

According to the Company's April 14, 2011 filing with the SEC on Form 8-K, Motricity paid $49.1 million in cash and issued nearly 3.3 million shares of its common stock as consideration for the acquisition.

**Motricity Begins to Reveal Material Adverse Conditions and Situations Affecting the Company's Financial Condition and Future Business Prospects**

40.    On May 3, 2011, the Company announced its first quarter 2011 financial results

VERIFIED SH'HOLDER DERIV. COMPLAINT    - 15 -

via press release.  Motricity reported a net loss of $6.1 million (a loss of $0.15 diluted earnings per share), which included the Adenyo acquisition, and revenue of $32.2 million.  Defendant Wuerch commented on the acquisition in part as follows:

> ***Motricity drove strong year-over-year growth in revenue and margin.***  Our international deployments with customers including XL, Celcom, Robi, Hello, Dialog and Reliance are on track, and managed services revenue from our new international customers grew 50 percent over the prior quarter. ***These facts, along with very encouraging usage metrics such as XL's recently reported 44% year-over-year growth in data revenue and 6 million users on XL!Go powered by Motricity, are strong leading indicators of substantial international growth.***  Our international mobile operator sales pipeline has grown ten-fold since this time last year, including targets in Southeast Asia, India, Latin America and Europe with several at the final sales stage.  The addition of mobile advertising and marketing capabilities to our mCore platform is amplifying these opportunities.  In a global market of over 4.5 billion mobile subscribers, Motricity is uniquely positioned to empower mobile operators, brands and advertising agencies to capitalize on the dynamic growth of the mobile internet. [emphasis added]

41.    On August 9, 2011, the Company issued a press release revealing disappointing second quarter 2011 financial results, reporting a net loss of $4.3 million ($0.09 diluted earnings per share), including the expenses of the Adenyo acquisition, and revenue of $34.6 million.  These results were below analyst forecasts and below the Company's previously touted expectations.  Then-CEO Wuerch commented on the results as follows:

> Our financial results are below expectations, due to headwinds in our North America carrier business, increased competition in the international market which impacted our ability to close new deals, and a later than expected closing of the Adenyo transaction.  We are providing a greater level of revenue detail in this press release on the primary areas of our business – North American Carrier, International Carrier and Mobile Marketing and Advertising – so that investors can better understand our company.
>
> *          *          *
>
> At the senior level of management, we are initiating a transition in the CFO position to replace Allyn Hebner, who will assist with the transition.  We also made the decision to make another transition in our senior team with Jim Ryan, who has previously served as

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

our Chief Strategy and Marketing and Development Officer and whose responsibilities are now being handled by others.

That same day, the Company filed a disclosure on Form 8-K that revealed that Ryan Hebner and had been terminated. Following the release of this news, the Company's stock price plummeted, opening at $2.26 per share on August 10, 2011, a decline of 50% on heavy trading volume.

42.     On August 22, 2011, the Company announced via press release that Wuerch had been terminated and that he had resigned his membership on the Company's Board of Directors.

43.     The statements referenced in paragraphs 29 through 41 above were all materially false and misleading when made because they misrepresented and failed to disclose adverse facts, which the Company, under the Individual Defendants' watch, wrongfully disregarded, including that: (1) demand for Motricity's products and services was being adversely affected by a faster than expected adoption of smartphones by consumers, such that only an increasingly smaller portion of the market identified a need for Motricity's products and services; (2) demand for Motricity's products and services by the Company's largest customers was not increasing to the extent represented; and (3) as a result, Motricity's overall business was not, in fact, growing as quickly as represented.

44.     The dissemination of these materially false and misleading statements was the direct result of the Individual Defendants' abdication of their fiduciary duties to prevent Motricity's officers from disseminating materially false and misleading information to the investing public and to install internal controls designed to prevent such subterfuge and to maintain oversight and manage the Company so that it does not act in violation of the law.

45.     As a result of the Individual Defendants' aforementioned breaches of their fiduciary duties, the Company is now forced to defend itself against class action litigation alleging violation of the federal securities laws, which necessitates the Company incurring wasteful costs and risks.

46.     Accordingly, Motricity has been and will continue to be injured.

VERIFIED SH'HOLDER DERIV. COMPLAINT          - 17 -

**DERIVATIVE ALLEGATIONS**

47.     Plaintiff brings this action derivatively on behalf of and for the benefit of Motricity to redress injuries suffered, and to be suffered, by it as a direct and proximate result of the breaches of fiduciary duties alleged herein.  The Company is a nominal defendant named solely in a derivative capacity.

48.     Plaintiff purchased and held shares of Motricity during the Relevant Period and continues to hold such shares.  Thus, Plaintiff was a Motricity shareholder during the wrongdoing complained of herein.

49.     Plaintiff will fairly and adequately represent the interests of the Company, and has retained competent counsel experienced in derivative litigation to enforce and prosecute this action.

50.     The wrongful acts complained of herein subject and will persist in subjecting Motricity to continuing harm because the adverse consequences of the injurious actions are still in effect and ongoing.

**THE FUTILITY OF DEMAND**

51.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

52.     At the time of the filing of this action, Motricity's Board of Directors is composed of five Directors, namely, Gary, Icahn, Judge, Nelson, and Firestone.

53.     Each of these directors has been named as a defendant in this action and was a director during the time period when Motricity is alleged to have issued materially false and misleading statements in the Company's public filings and press releases.

54.     The Individual Defendants owed a duty to Motricity and its shareholders to be reasonably informed about business and operations of the Company.  The Individual Defendants completely abdicated their oversight duties to the Company by failing to prevent the improper conduct and/or implement internal procedures and controls necessary to prevent the wrongdoing alleged herein.

VERIFIED SH'HOLDER DERIV. COMPLAINT        - 18 -

55.    Plaintiff did not make a demand on the Company's Board prior to instituting this action because the wrongful acts complained of herein evidence a pattern of conduct showing a wholesale abandonment of their fiduciary duties, including the duty to exercise oversight, due care, and diligence.    Demand is excused because the Board has exhibited antipathy towards investigating or prosecuting corporate wrongdoing.    To date, the Board has failed to take any action in this regard.

56.    These acts, which demonstrate a pattern of misconduct, were not, nor could they have been, the product of a valid or good faith exercise of business judgment.

57.    Demand on the Board would be futile because Defendants Icahn, Gary, and Nelson lack independence as each is a mere proxy for Motricity shareholder and prominent activist investor Carl Icahn, each is beholden to Carl Icahn for placing them on the Board and for other employments and appointments, and as such each is dependent on the others to implement Carl Ichan's directives regarding Motricity.    Through Defendants Icahn, Gary, and Nelson, Carl Icahn completely dominates the Board.    Defendants Icahn, Gary, and Nelson have collaborated for more than a decade in service to Carl Icahn, each are employees and/or directors of companies owned or controlled by Carl Icahn and each have developed close personal relationships with each other and Carl Icahn.    Defendant Icahn is the son of Carl Icahn and has held positions at many companies owned or controlled by Carl Icahn or in which Carl Icahn has or had a substantial ownership interest in, including as (i) investment analyst at Icahn Capital LP (2002-2010), and (ii) current director of The Hain Celestial Group, Inc., Cadus Corporation, Take-Two Interactive Software, Inc., and American Railcar Industries, Inc.    Defendant Gary is married to Carl Icahn's stepdaughter, and has held positions at many companies owned or controlled by Carl Icahn or in which Carl Icahn has or had substantial ownership interest in, including as (i) current Senior Vice President of Icahn Enterprises, LP., (ii) at Icahn Associates Corporation in several positions, including as Chief Operating Officer of Icahn Sourcing LLC., (iii) current director of American Railcar Industries, Inc. (where he serves with Defendant Icahn), and (iv) current director of WestPoint International, Inc.    Defendant Nelson has held

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

positions at many companies owned or controlled by Carl Icahn or in which Carl Icahn has or had substantial ownership interest in, including as (i) current director of Icahn Enterprises GP, (ii) General Partner of Icahn Enterprises LP, (iii) current director of Take-Two Interactive Software, Inc. (where he serves with Nelson), Tropicana Entertainment, Inc., American Real Estate Partners LP, and Atlantic Coast Entertainment Holdings, Inc., and (iv) former director of Viskase Companies, Inc. and Shuffle Master, Inc.  Such overwhelming domination by Carl Icahn and affiliation between Carl Icahn and Defendants Icahn, Nelson, and Gary would likely prevent the remaining two Board members, Judge and Firestone, from pursuing the derivative claims brought herein or otherwise exercising independent judgment.

58.    Demand is excused because the injury to the Company alleged herein is a direct result of the Board's failure to implement internal controls and oversee and manage the Company.  Accordingly, the Board cannot exercise independent objective judgment in deciding whether to bring this action because they are personally interested in the outcome of this lawsuit as it is their actions that have subjected Motricity to liability and harm.

59.    Further, any suit by the Company to remedy these wrongs would likely expose the Individual Defendants and Motricity to further liability for violations of the federal securities laws, in that it no doubt would result in additional civil actions being filed against one or more of the Individual Defendants (and would further strengthen the existing civil litigation against the Individual Defendants).  Thus, Individual Defendants are hopelessly conflicted in making any supposedly independent determination of whether the Company should sue the Board.  Thus far, at least one class action complaint for violations of the federal securities laws has been filed against the Company as a result of the wrongdoing set forth herein.

60.    Motricity has been, and will continue to be, exposed to significant losses due to the wrongdoing complained of herein.  Yet, Motricity's Board has not authorized the Company to file a lawsuit against Individual Defendants or others who were responsible for the wrongful conduct to attempt to recover for Motricity any part of the injury the Company suffered and will suffer thereby.

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

61.     If the current directors were to cause the Company to bring this action against the Individual Defendants, Individual Defendants would thereby admit their own misconduct in failing to implement internal controls and oversee and manage the Company, which underlies allegations contained in the class action complaints for violations of federal securities law.  Such admissions would impair the defense of the securities fraud class actions and greatly increase the probability that the Individual Defendants will be found to be personally liable in the securities fraud class actions, in an amount likely to be in excess of any insurance coverage available to the Board.  Thus, the Board would be forced to take positions contrary to the defenses they will likely assert in the securities class action litigation.

62.     Despite the Board having knowledge of the facts underpinning the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover damages or other relief for Motricity in connection with any of the wrongdoing alleged by Plaintiff herein.

63.     The conduct complained of herein could not have been the product of good faith business judgment.  Each of the directors named herein as an Individual Defendant faces a substantial likelihood of liability for breaching their fiduciary duties because, the Individual Defendants, through their intentional misconduct, they have subjected Motricity to substantial injury.  Furthermore, the conduct of the Board has subjected the Company to substantial potential liability in connection with securities fraud class action litigation.  Through their misconduct, the Board has subjected the Company to a substantial risk of material costs, fines, and adverse judgments associated with the securities fraud class actions.  Such actions by the Board constitute waste and cannot be protected by the business judgment rule.

64.     Accordingly, for all of these reasons, making a pre-suit demand on the Board would be futile and is therefore excused.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

## Count I

### Against all Individual Defendants

### for breach of fiduciary duties for failing to prevent improper conduct, failing to

### install internal controls, and failing to properly oversee and manage the company

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     The Individual Defendants owed and owe to Motricity fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants specifically owed and continue to owe Motricity the highest obligations of good faith, fair dealing, loyalty and due care.

67.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision.

68.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Motricity has sustained substantial injury, not only monetarily, but also to its corporate image and goodwill.

69.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

70.     Plaintiff, on behalf of Motricity, has no adequate remedy at law.

## Count II

### Against all Individual Defendants

### for unjust enrichment

71.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Motricity.

73.     Plaintiff, as a shareholder and representative of Motricity, seeks restitution from the Individual Defendants, and each of them, and seek and order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants, and each of

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

them, from their wrongful conduct and breaches of their fiduciary duties.

## PRAYER FOR RELIEF

Plaintiff prays for relief and judgment as follows:

A.      Against all Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.      Directing Motricity to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders a vote on a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C.      Awarding to Motricity restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by Defendants;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues so triable.


Dated:  September 23, 2011          Respectfully submitted,

LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
By:  s/ Cliff Cantor, WSBA # 17893
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:     (425) 868-7813
Fax:     (425) 868-7870

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LEVI & KORSINSKY, LLP
Eduard Korsinsky (of counsel)
30 Broad St., 15th Fl.
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

Attorneys for Plaintiff Makda

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

## VERIFICATION

I,   Mohammed S. Makda        , under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.

Dated: September  01  , 2011
_____

sign